HARDEN et al. v. AMERICAN-FIRST NAT. BANK OF OKLAHOMA CITY.

No. 20588. Opinion Filed Nov. 3, 1931.

Rehearing Denied Jan. 12, 1932.

**12**

L. M. King and J. P. Crawford, for plaintiffs in error.

McKeown & Green, Hayes & Richardson, and H. Parker Sharp, for defendant in error.

RILEY, J. The defendant in error bank commenced this action July 25, 1927, upon a promissory note. The note was due ten years after date and in the principal sum of $2,500, and was executed October 12, 1912, by defendants to the American Investment Company, and subsequently assigned to plaintiff bank.

The defendants by answer admitted execution of the note, but alleged that the same was secured by a real estate mortgage upon a certain 320-acre farm in Johnston county; that on December 30, 1912, defendants sold that land to H. F. Reed, who assumed and agreed to pay said note and mortgage; that on November 29, 1915, Reed sold said farm to W. W. Corbin, who assumed and agreed to pay said note and mortgage; that in November, 1922, W. W. Corbin and wife executed and delivered to the American Investment Company their note for $2,500, secured by a real estate mortgage upon the said farm for the purpose of paying the first mentioned note and mortgage of defendants; that said American Investment Company acted in that transaction as the agent of plaintiff bank and that said mortgage was recorded in Johnston county on December 16, 1922; that at no time since the sale of said land to Reed have defendants received any notice of the failure of Reed or Corbin, his successor, to pay said mortgage indebtedness until the time of institution of the present action.

By way of cross-petition defendants plead that they be subrogated to the rights of plaintiff and declared the owner of the mortgage upon said premises, with right to foreclose same.

Plaintiff denied generally. Thereafter and on June 7, 1928, defendants amended their answer by alleging that W. W. Corbin, who assumed this mortgage indebtedness, paid the same by executing and delivering on April 12, 1922, to the plaintiff bank a mortgage upon said land, including other land, for the sum of $75,000; that said mortgage was a renewal of the note sued upon; that

subsequently plaintiff bank brought action upon said mortgage in cause 7730, styled American Natl. Bank of Okla. City v. R. J. Looney, obtained judgment and sold the land, but that defendants were intentionally not made parties in said foreclosure, in order that they might be separately subjected to the payment of the note herein presented. That upon foreclosure, in said suit, the land was bought by plaintiff bank and thereafter sold to one McCrummen—wherefore estoppel was claimed. That execution of the last-mentioned Corbin note and mortgage merged the indebtedness now claimed into that foreclosed in cause No. 7730.

On September 12, 1928, plaintiff bank amended its petition, admitting the 230 acres of land in controversy were sold by it for $11.50 per acre, or a total of $2,645, alleging that plaintiff bank had paid taxes on said farm for the years 1923, 1924, and 1925, in the sum of $336.73, and tendering a credit on the indebtedness sued upon in the sum of $2,645, less $336.72, with interest, and setting up an additional interest coupon of $75 on defendant's indebtedness which became due November 1, 1922, making a total indebtedness of $2,575, with interest at 10 per cent. from November 1, 1922, less credits tendered.

On October 20, 1928, defendants answered the amended petition, admitting that the 230 acres of land in controversy had been sold by plaintiff bank, but specifically denying that plaintiff bank only received $11.50 per acre therefor, but alleging that the same was so sold to Lee McCrummen for $14 per acre, but that at the same time the land was reasonably worth $20 per acre; that the note sued upon should have been credited with the reasonable value of said land; defendants denied their liability for taxes in the sum of $336.73, or for interest coupon of $75, and alleged that if said taxes were paid by plaintiff it was after it became the owner of the land.

The defendants further pleaded that they became sureties upon said note by reason of the sale of said land to Reed and the assumption of the indebtedness by him, and the subsequent sale to Corbin and his assumption. That plaintiff's purchase of said land, securing said note, destroyed the security, thus injuring the remedy of defendants, inconsistent with their rights, by reason of which defendants are discharged from liability upon said indebtedness.

Judgment was for plaintiff in the sum of $1,138.79, with interest at 10 per cent. from

February 15, 1929, date of judgment, arrived at in this manner: $2,575, note and interest coupon at 10 per cent. interest from November 1, 1922, to December 21, 1927, plus $336.73, taxes paid with interest at 6 per cent. from date of payment to December 21, 1927, less $3,220, credit for land sold at $14 per acre, the balance at 10 per cent. interest according to note.

Defendants in presenting their appeal set out three propositions:

(1) That the court erred in permitting plaintiff to amend its petition by stating two new causes of action, to wit: Taxes paid, amounting to $336.73, and interest coupon note for $75.

(2) Error of the court in refusing to find for defendants upon the close of plaintiff's testimony; and

(3) Error of the court in refusing to subrogate the defendants to the rights of the plaintiff in the mortgage upon said premises.

These propositions are but slightly supported by argument or authorities in the brief of plaintiffs in error. We properly could treat them as abandoned. Smith v. Gooding, 100 Okla. 230, 229 P. 269; Connelly v. Adams, 52 Okla. 382, 152 P. 607; DeVitt v. City of El Reno, 28 Okla. 315, 114 P. 253.

Defendants conclude their brief as follows:

"We therefore most respectfully submit that the judgment should be reversed and rendered in favor of defendants: First, for the reason that the lands which were mortgaged to secure this note had been sold by plaintiff, thereby destroying defendants' security and that plaintiff has placed themselves in such a position that they cannot allow defendants to become subrogated to the rights of plaintiff in the mortgaged property, and second, that the judgment for $336.73 was unauthorized under the facts in this case, as the defendants owed plaintiff nothing for taxes, they having been paid by plaintiff subsequent to the purchase of the land."

Allowance of amendments to pleadings are largely within the discretion of the trial court. No argument or authority is presented for denial of the recovery on the $75 item. Plaintiff below was entitled to deduct taxes for the years 1923 to 1925, inclusive. While these taxes were not paid until after plaintiff acquired title to the land, nevertheless the lien for taxes outstanding diminished the value of the land pro tanto.

The purchasers of this mortgage incumbered land, who assumed and agreed to pay the mortgage indebtedness, became as to the vendors (defendants) the principal debtor, and vendors (defendants) became sureties. Winans v. Hare, 46 Okla. 741, 148 P. 1052.

The land became the primary fund for payment of the indebtedness. Greer v. Orchard, 175 Mo. App. 494, 161 S. W. 875.

Section 5153, C. O. S. 1921, provides a surety is exonerated:

"Second: To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security." Bank v. Seaton, 69 Okla. 99, 170 P. 477; Shuttee v. Coalgate Grain Co., 70 Okla. 6, 172 P. 780.

Herein plaintiff exhausted the security of defendants which otherwise defendants themselves could have exhausted. To the extent that defendants were prejudiced thereby they are to be exonerated upon their indebtedness. The defendants were only prejudiced to the extent, if any, that the land was sold for less than it was worth.

The evidence upon the worth of the land at the time plaintiff sold it is in conflict.

The pleadings of defendant limit the value to $20 per acre. The judgment was based upon a valuation of $14 per acre.

Corbin testified the land would sell for $25 or $30 per acre. McCrummen testified that he paid $14 per acre for the 230 acres of land included in a tract of 3,000 acres, but that this land was worth $25 or $30 per acre. Jameson testified the land was worth $20 or $25 per acre. L. L. Klein testified for plaintiff that the land was not worth $15 per acre, for that he had advertised it and listed it with farm sales companies and could not get $15 for it.

Defendants contend that this is an equitable action and that the judgment as to value is against the clear weight of the evidence and should be reversed. Plaintiff says this is a law case and the judgment as to value is reasonably supported by evidence and should be affirmed.

We hold, without determining whether it is an action at law or in equity, that the judgment as to value is not against the clear weight of the evidence.

The greater number of witnesses, who were all qualified to estimate the value, said the land was worth $20 per acre or more,

yet by actual test the one witness to the contrary testified that no purchaser could be found who would pay $15 per acre. The plaintiff was forced to take $14 per acre.

Under the issues presented on this appeal we are forced to affirm the judgment, which we now do.

LESTER, C. J., and CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., dissents. HEFNER, J., absent.